FILED

2008 Jul-31  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

RONALD E. PEEPLES,

        Plaintiff,

v.                                            CV-07-J-2244-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION

This case is before the court on the plaintiff's appeal of an adverse decision of the Commissioner of Social Security denying his claim that he was entitled to supplemental security income benefits. This court has jurisdiction pursuant to 42 U.S.C. § 405. Having considered the record and briefs of the parties, the court finds for the reasons that follow that the decision of the Commissioner is due to be **AFFIRMED**.

### Factual Background

The plaintiff is a fifty-year-old African-American male with a long list of allegedly disabling impairments (R. 129, 284). He is 5' 9" tall and weighs 276 pounds (R. 285). The plaintiff has an eighth grade education and previous work experience as a janitor, machine tender, and molder helper (R. 285, 286, 287)

The plaintiff claims that he has been disabled since September 1, 2003, because of his back, bronchitis, a pinched nerve in his right arm, high blood pressure, vision problems, and acid reflux (R. 73, 99). The plaintiff visited the doctor on August 25, 2003, complaining of problems keeping food down and shortness of breath during the last two to three months (R. 125). The plaintiff's blood pressure was measured at 200/120 (R. 125). The plaintiff was prescribed medication to treat his ailments and told to come back two weeks later for a follow up appointment (R. 125). The plaintiff, however, missed his two week follow up and did not return to the doctor until November 26, 2003 (R. 124). At the November 26, 2003, visit the plaintiff's blood pressure was 220/110 and the doctor noted that the plaintiff was not taking his blood pressure medications nor was he having his blood pressure checked (R. 124).

On December 5, 2003, the plaintiff was seen at BioLife Integrative HealthCare (R. 161). The plaintiff complained of hypertension, intermittent left side pain, and problems keeping food down (R. 161). Significantly, the plaintiff denied blurred vision and headaches (R. 161). The plaintiff's blood pressure at the time of the examination was 220/118 (R. 161). The doctor ordered the plaintiff to take his medication and then have his blood pressure checked thirty minutes later (R. 161). When the plaintiff's blood pressure was checked thirty minutes later it

2

was 224/124 (R. 161). The plaintiff was given additional medication and thirty minutes later his blood pressure was 174/116 (R. 161). The plaintiff was again given medication following the third reading (R. 161). Upon discharge, the plaintiff's blood pressure was 154/104 (R. 161).

A consultative evaluation of the plaintiff was performed by Dr. Nicole Pappas on March 6, 2004 (R. 129). Dr. Pappas states in her report that the plaintiff's chief complaints were of constant double vision and floaters, left upper quadrant pain, dysphagia,[1] and chest pain (R. 129). Following her examination of the plaintiff, Dr. Pappas diagnosed him with a history of double vision/floaters that requires further evaluation by an opthalmologist, hypertension, insomnia, dyspepsia,[2] and a history of panic attacks (R. 132). Dr. Pappas found that the plaintiff was capable of standing for at least six hours in an eight hour day and that he could be expected to sit without restrictions (R. 132). Dr. Pappas also found that the plaintiff could lift or carry eighty pounds on an occasional basis and forty pounds on a frequent basis (R. 132). Dr. Pappas placed no postural or manipulative limitations on the plaintiff (R. 133). Dr. Pappas stated that there may

---

[1]Dysphagia is the medical term for difficulty swallowing. Dorland's Illustrated Medical Dictionary 417 (28th ed. 1994).

[2]Dyspepsia is an impairment of the power or function of digestion. Dorland's Illustrated Medical Dictionary 417 (28th ed. 1994).

3

be relevant visual limitations and that the plaintiff needed to be evaluated by an
ophthalmologist (R. 133).

　A note from June 13, 2005, states that Dr. Unnoppet called in a prescription
medication for the plaintiff, but that he was not entitled to any refills until he was
seen again by Dr. Unnoppet (R. 149).  From the record it does not appear that the
plaintiff was seen again by Dr. Unnoppet (R. 149).  Dr. Unnoppet terminated the
plaintiff as a client on August 5, 2005 (R. 150).

On June 29, 2005, a non-examining psychiatric review was performed by
Dr. Frank J. Nuckles (R. 134-46).  Dr. Nuckles states that the plaintiff was
diagnosed with depression by his treating physician and prescribed Lexapro for
treatment (R. 137).  Dr. Nuckles found that the plaintiff only suffered from mild
limitations with regard to his activities of daily living, social functioning, and
ability to maintain concentration, persistence or pace (R. 144).  Dr. Knuckles
further found the plaintiff's statements about his symptoms and functional
limitations were not credible as the severity alleged was not consistent with the
medical evidence of record (R. 146).

The plaintiff was seen at the Shelby Baptist Medical Center emergency
room on March 20, 2006, for difficulty breathing (R. 168-70).  The plaintiff was
diagnosed with minimal central vascular prominence and no acute lung disease (R.

168).  The plaintiff presented to the Brookwood Medical Center emergency room on March 22, 2006, complaining of shortness of breath (R. 217).  The plaintiff was diagnosed with probable pneumonia, obesity, hypertension, and chronic obstructive pulmonary disease ("COPD") (R. 218).

On January 13, 2007, the plaintiff was seen at the Shelby Baptist Medical Center (R. 264).  The report states that the plaintiff was suffering from shortness of breath and elevated blood pressure (R. 264).  The report states that the plaintiffs symptoms had begun that day (R. 264).  In addition, the report states that the plaintiff had not taken his blood pressure medication (R. 264).  Another report from the plaintiff's January 13, 2007, states that the plaintiff had experienced trouble breathing for the past week and a half (R. 265).  On August 25, 2007, the plaintiff was seen by Dr. Andrew M. Allen at Shelby Baptist Medical Center (R. 244).  Dr. Allen found that while the plaintiff's heart size was mildly enlarged, there was no evidence of congestive failure (R. 244).

The plaintiff's hearing in front of the Administrative Law Judge ("ALJ") was held on January 31, 2007 (R. 280).  The plaintiff testified that he suffered from shortness of breath after walking a distance as short as a city block (R. 289). The plaintiff testified that he quit his most recent job as a janitor because his

vision made driving at night unsafe[3] (R. 289-90).  When asked how much weight he could lift and carry, the plaintiff responded that he could lift and carry sixty to sixty-five pounds (R. 295).  The plaintiff further stated that he could frequently carry twenty pounds (R. 295).  The plaintiff stated that he was capable of sitting at a table or workbench for 1 to 1.5 hours (R. 295-96).  The plaintiff testified that he could stand and work for only about fifteen minutes (R. 296).

A vocational expert ("VE") also testified at the hearing (R. 299-310).  When asked about the plaintiff's breathing problems, the VE testified that if the problems caused mild to moderate limitations, the plaintiff would be capable of working (R. 306).  However, if the plaintiff's problems became such that he was experiencing moderately severe to severe limitations, he would be unable to perform any job (R. 306).

The ALJ found that the plaintiff's dyspepsia, obesity, and hypertension were severe impairments (R. 28).  The ALJ found that the plaintiff's diabetes, fatty liver, and allegations of depression and panic attacks were not severe impairments (R. 29).  The ALJ found that the plaintiff's alleged back problems, vision problems, and pinched nerve in his right arm were not medically determinable

---

[3]Notably, the plaintiff did not mention any of his other alleged impairments when asked why he quit his most recent job as a janitor.

impairments (R. 29).  Based on these findings, the ALJ held that the plaintiff was capable of performing light work as long as he worked in a clean work environment and had the freedom to change positions as needed (R. 31).

## Standard of Review

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision.  *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).  Even if the court finds that the evidence weighs against the Commissioner's decision,

the court must affirm if the decision is supported by substantial evidence.
*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Harwell v.
Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); *Martin*, 894 F.2d at 1529.

 This court may not decide facts anew, reweigh evidence or substitute its
judgment for that of the ALJ, even if the court finds that the weight of the
evidence is against the Commissioner's decision.  *Martin*, 894 F.2d at 1529.  This
court must affirm the decision of the ALJ if it is supported by substantial evidence.
*Miles*, 84 F.3d at 1400; *Bloodsworth*, 703 F.2d at 1239.   However, no such
presumption of correctness applies to the Commissioner's conclusions of law,
including the determination of the proper standard to be applied in reviewing
claims.  *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v.
Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).   Furthermore, the
Commissioner's "failure to apply the correct law or to provide the reviewing court
with sufficient reasoning for determining that the proper legal analysis has been
conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

## Discussion

 The plaintiff argues that the decision of the ALJ should be overturned for
three reasons: (1) the ALJ failed to properly classify the plaintiff's pulmonary
impairments as severe; (2) the ALJ failed to fully develop the record; and (3) the

ALJ substituted his own judgment for that of a physician.  For the reasons that follow, the court is of the opinion that none of the plaintiff's arguments justify reversing the ALJ's decision.

In his opinion, the ALJ held that the medical records did not reflect any type of chronic pulmonary impairment (R. 35).  Instead, the ALJ states that the record reflects that the plaintiff has received treatment for acute conditions such as bronchitis and pneumonia (R. 35).  The court finds that the ALJ's holding that the plaintiff's pulmonary condition is not severe is supported by substantial evidence. The plaintiff's first medical records from August of 2003 state that he had only suffered from shortness of breath for the past two to three months (R. 125).  The plaintiff was diagnosed with dyspepsia and hypertension - notably the plaintiff was not diagnosed with any pulmonary impairments (R. 124).  Similarly, when the plaintiff was treated at the Shelby Baptist emergency room in September of 2003 for dyspepsia, the examination revealed normal breathing sounds and no respiratory distress (R. 35).  Furthermore, a chest x-ray showed no acute distress (R. 35).

In November of 2003, the plaintiff complained of difficulty taking a deep breath, but denied any problems with shortness of breath (R. 124).  Once again he was not diagnosed with any type of pulmonary impairment (R. 124).  In March

9

and December of 2004, the plaintiff did not complain to Dr. Upponnet of any

shortness of breath (R. 157-58).

The ALJ correctly notes that although the plaintiff received treatment for

shortness of breath in March of 2006, the plaintiff's condition was attributed to

pneumonia and bronchitis, acute conditions which imposed no permanent

limitations on the plaintiff's abilities to perform work activities (R. 36).  Similarly,

a record from January 13, 2007, states that the plaintiff had experienced trouble

breathing for only 1.5 weeks (R. 265).  The lack of treatment records for any

pulmonary problems between 2004 and 2006 further supports the ALJ's decision

that the plaintiff's pulmonary problems are not severe or permanent.

The plaintiff's argument seems to rest primarily on the statement in the

March 22, 2006, emergency room report that the plaintiff has "chronic obstructive

pulmonary disease" (R. 218).  However, this is the only diagnosis of COPD in the

record and the subsequent January 1, 2007, record states that the plaintiff has only

suffered from shortness of breath for the last 1.5 weeks and does not include a

COPD diagnosis (R. 265).  In sum, the medical records do not support the

plaintiff's argument that his pulmonary impairments are severe.

The plaintiff's second argument is that the ALJ failed to fully develop the

record.  The plaintiff asserts that the ALJ failed to fully develop the record by not

including evidence after March 2006, more than a year prior to the ALJ's decision. The plaintiff's argument is without merit because the burden is on the plaintiff to establish his disability. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2004)("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim"). The plaintiff does not allege that he submitted evidence after March of 2006 to the ALJ which was not considered.  Moreover, this court has considered the evidence from after March 2006 which was submitted by the plaintiff to the Appeals Council and is of the opinion that those records are consistent with the ALJ's decision.

The plaintiff chiefly alleges the ALJ failed to develop the record concerning the plaintiff's vision problems and erred by not finding the alleged condition severe.  The plaintiff asserts that a consultative examination of the plaintiff's vision should have been performed.  However, according to the ALJ, the plaintiff twice failed to appear at scheduled consultative evaluations.  Moreover, the court is of the opinion that the record contains sufficient evidence for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (stating that "[t]he regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the

11

claimant's treating medical sources or other medical sources").

The medical evidence of the plaintiff's vision problem does not support the plaintiff's argument that his problem is severe.  Specifically, the plaintiff's records are filled with inconsistencies concerning the nature and extent of the plaintiff's vision problems.  For example, when the plaintiff received treatment in 2003 from Birmingham Health Care, he reported no vision abnormalities over the course of several examinations (R. 124-25).  Similarly, in December of 2003 the plaintiff denied blurred vision (R. 161).  Upon examination, Dr. Unnoppet determined that plaintiff had double vision only when the plaintiff tilted his head to the right (R. 161).  On March 20, 2004, the plaintiff alleged only a three month history of double vision (R. 158).  In September 2003 and March 2006 the Shelby Baptist Medical Center reported that the plaintiff's eyes were normal (R. 199, 203).  In March 2006, the Brookwood Medical Center also reported a normal eye examination (R. 218).  However, on March 6, 2004, the plaintiff told Dr. Pappas that he had suffered from double vision and floaters for the past two years (R. 129, 132).  Given these numerous inconsistencies, the court finds that the plaintiff's statements regarding his vision problems are not credible and that the ALJ properly found that the problems were not severe.

The plaintiff's final argument is that the ALJ improperly substituted his

opinion for that of the medical professionals.  Specifically, the plaintiff points to the ALJ's statements that the plaintiff could likely eliminate his chest pain by controlling his blood pressure and that the plaintiff could time his meals in such a way as to minimize his symptoms during working hours (R. 35, 37).  It is improper for the ALJ to substitute his own judgment for that of medical and vocational experts.  *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).  One could certainly argue that the above statements from the ALJ's opinion were improper because the ALJ substituted his own opinion for that of the plaintiff's physicians.  However, the court reads those statements as a finding by the ALJ that the medical evidence supports his conclusion that if the plaintiff had been compliant with his doctor's orders he could control his symptoms in such a way that would allow him to return to work.  There is no medical evidence from any doctor that the plaintiff is disabled.

The plaintiff's medical records supports the court's interpretation of the ALJ's statements.  For example, the plaintiff's visit to Dr. Unnoppet in 2003 demonstrates that the plaintiff's blood pressure could be controlled through medication (R. 161).  In addition, the record is filled with statements from treating physicians that the plaintiff has been non-compliant with regard to his medications (*See, e.g.*, R. 124, 277).  Therefore, the ALJ did not improperly substitute his own

13

judgment for that of the plaintiff's physicians.  Instead, he recognized that if the plaintiff were to comply with his doctor's orders, he would be capable of returning to work.  The ALJ's decision is thus not due to be reversed on this final ground.

## Conclusion

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).  The court has carefully reviewed the entire record in this case and is of the opinion that the Commissioner's decision is supported by substantial evidence and that proper legal standards were applied in reaching that decision.  Accordingly, the decision of the Commissioner must be **AFFIRMED**.

**DONE** and **ORDERED** this the 31st day of July 2008.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

14